THOMPSON, J.
 

 This case presents a contest between two creditors of the succession of W. F. Williams, each asserting a superior right and privilege to be paid by preference and priority out of the proceeds of the sale of the succession property.
 

 Williams died on October 11, 1923, intestate, and his succession was opened by the appointment of an administrator. The succession was in debt, and the administrator obtained an order directing a sale of all of the property to pay debts. The -property consisted of real estate, valued on the inventory at $30,000, and personal property, valued at $6,452.20. At the sale the Pan-American Life Insurance Company, a mortgage creditor of the succession, became the adjudicatee of all the property.
 

 Pending the advertisement and before the sale, Mrs. Ernestine Z. Werdebaugh brought suit against the succession for $1,030.56, alleging the same to be due her for wages as secretary and clerk and general overseer of Williams’ plantation under a verbal eo.ntraet made with him at $15 per week for about
 
 iy2
 
 years, and for the further sum of $786, being at the 'rate of $6 a day, as compensation for nursing Williams during his last illness. The last-named demand, is based on a quantum meruit.
 

 On the application of Mrs. Werdebaugh, the court ordered that the immovable and movable property be sold separately, and that the sheriff retain in his hands a sufficient amount to pay the claim of the plaintiff.
 

 Under an agreement between the administrator and the purchaser at the succession sale, the latter was permitted to execute a bond in the sum of $7,500 to guarantee the payment of all privilege debts that might prime the mortgage of the insurance company.
 

 The insurance company intervened in the suit, and opposed the demand of the plaintiff, and specially denied that plaintiff had any privilege on the succession property, or the proceeds of the sale thereof.
 

 The administrator also contested the claim of plaintiff, and likewise denied that she had any privilege.
 

 After a trial in the district court, judgment was rendered in plaintiff’s favor for the full 'amount of her claim, with recognition of a privilege on the proceeds of the sale of all the property, both movable and immovable.
 

 On ax>peal by the insurance company, the judgment was affirmed. The succession representative did not appeal, nor did he answer the appeal of the intervener. The judg
 
 *817
 
 ment of the district court, as between the plaintiff and the succession, therefore became final.
 

 The ease is before us on the relation of the insurance company.
 

 Opinion.
 

 Two errors are urged against the opinion and decree of the Court of Appeal: First, in holding that the limitation upon. the admissibility or competency of parol evidence under Act 207 of 1906 does not apply in this case, because the action was begun within one year after the death of the deceased; and, second; in holding that the plaintiff’s claim for services as overseer, etc., was secured by a privilege on the immovable property .superior in rank to the mortgage in favor of the Pan-American Life Insurance Company. The last-named contention appears to be based on the fact that the plaintiff never recorded any lien for the amount of her claim, as required by section 19, article 19, of the Constitution of 1921.
 

 It is conceded that the plaintiff’s suit was filed against the succession in less than one year after the death of Williams.
 

 Hence, under the ruling in Hava v. Cafero, 157 La. 1007, 103 So. 294, the provisions of Act 207 of 1906 have no application to this case. In the case referred to we said:
 

 “Claims asserted against deceased parties within one year after their deaths are not affected by the provisions of the act.
 

 “These claims, in general, are provable in the manner and form required for the proof oi obligations. To hold otherwise would nullify many of the ordinary business transactions.”
 

 The doctrine announced in the Spillman Case, 147 La. 47, 84 So. 489, and the casp of Succession of Manion, 148 La. 98, 86 So. 667, was expressly overruled in so far as it was in conflict with the ruling in the Hava Case, and we find no sufficient reason to recede from the later pronouncement and to return to the holding‘in the two earlier cases.
 

 We have referred to this matter because of the insistence that the court ought to go back to the original interpretations of the act of 1906.
 

 Both the district court and the Court of Appeal found as a fact that both demands of the plaintiff had been legally and sufficiently established by the evidence. In the opinion .of the Court of Appeal it is said:
 

 “Taking up the two claims in inverse order, our appreciation of the evidence is that opponent’s services as- nurse were undoubtedly rendered for the time claimed; that such services were arduous, were accepted by the deceased,' were absolutely necessary, and were of great benefit to him. Their rendition was amply proved by opponent, by Stanwood, the administrator, and by two physicians of high repute. Both of these physicians, Dr. Stark and Dr. Kleinpeter, testify that opponent’s services were onerous, were rendered intelligently and faithfully, and were worth as much as if rendered by a trained nurse, and that in their opinion $6 per day was a fair compensation. Whether the evidence upon this claim be weighed from the ordinary standpoint, or under C. C. art. 2277, or the provisions of Act 207 of 1906, it is ample to sustain the demand of opponent.”
 

 As to the other demand of plaintiff (opponent), the court found numerous circumstances which went to corroborate the plaintiff’s testimony as to the contract and the services performed by her as overseer and secretary. In that connection the Court of Appeal said:
 

 “The services which she claims she was engaged to perform are proved by Louvenia Johnson, by Stanwood, and are reluctantly admitted by Herbert, field foreman, and by Biretta, witnesses who were hostile to opponent.” “After the death of Williams, the administrator continued the employment of opponent and paid her $15 per week.”
 

 A review of the evidence has not enabled us to reach a different conclusion on this question of fact than the one arrived at by the district judge and the judges of the Court of Appeal.
 

 
 *819
 
 What we have said, therefore, is sufficient answer to the contention that the demands of the plaintiff are not supported by competent and adequate testimony.
 

 It is conceded by counsel for plaintiff that the courts below were in error in holding that the plaintiff was entitled to a privilege on the immovable property. No law has.been cited, and we know of none, which accords a privilege on immovable property in favor of an overseer or secretary. It is contended, however, that there is sufficient proceeds of the sale of the personal property to satisfy plaintiff’s claims, and that said proceeds should be so applied in preference to the insurance 'company, whose mortgage only affects the immovable property.
 

 The record seems to justify this contention. As we have heretofore said, the court ordered all the movable and immovable property to be sold separately, and we assume this was done.
 

 It is argued by relator that all of the movable property was attached to the plantation and thereby became immovable by destination, and hence was covered by the mortgage. The relator’s mortgage is not in the record, and we have no means of knowing whether the movables, and especially the live stock, were specially described in the mortgage or not. Cbunsel for plaintiff state that the live stock were not so included, and we accept this as true, in the absence of any evidence to the contrary.
 

 -Act 169 of 1914 provides that no mortgage upon rural real estate shall cover or affect the live stock upon the said real estate, or that may thereafter be placed thereon, unless the said live stock be specially mortgaged in the -act of mortgage, in which ease the animals so hypothecated shall be described.
 

 It is quite clear that, in the absence of inclusion in the act of mortgage, the relator has no claim .on the live stock superior to the claim of plaintiff.
 

 The judgment of the Court of Appeal and of the district court will have to be amended.
 

 It is therefore ordered and decreed that the judgment here under review, as well as that of the district court, be amended by restricting the privilege of the plaintiff for overseer’s wages to the proceeds of the mov; able property of the succession, and, as thus amended, said judgments be affirmed; the costs to be taxed
 
 ak
 
 provided in the judgment of the district court.